## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE JAMES MADISON PROJECT *
1250 Connecticut Avenue, NW *
Suite 200 *
Washington, D.C.  20036 *
 *
  and *
 *
KEN DILANIAN *
NBC News Washington Bureau *
4001 Nebraska Avenue, NW *
Washington, D.C. 20016 *
 *
  Plaintiffs, *
 *
  v. * Civil Action No. 16-227
 *
DEPARTMENT OF JUSTICE *
950 Pennsylvania Avenue, NW *
Washington, D.C. 20530 *
 *
  and *
 *
CENTRAL INTELLIGENCE AGENCY *
Washington, D.C. 20505 *
 *
  Defendants. *
 *
* * * * * * * * * * * *

## <u>COMPLAINT</u>

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, <u>et</u> <u>seq.</u>, <u>as amended</u>, for the disclosure of agency records improperly withheld from plaintiffs The James Madison Project and Ken Dilanian by the defendants Department of Justice and the Central Intelligence Agency (as well as their subordinate entities).

## JURISDICTION

1.   This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

2.   Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3.   Plaintiff The James Madison Project ("JMP") is a non-partisan organization established in 1998 to promote government accountability and the reduction of secrecy, as well as educating the public on issues relating to intelligence and national security.

4.   Plaintiff Ken Dilanian ("Mr. Dilanian") currently serves as an Investigator Reporter covering national security for NBC News in Washington, D.C. He has written for The Associated Press, The Los Angeles Times, USA TODAY and the Philadelphia Inquirer. He reported from Iraq and more than two dozen other countries as a foreign correspondent.

5.   Defendant Department of Justice ("DOJ") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by the plaintiffs which are the subject of this action. DOJ controls – and consequently serves as the proper party defendant for litigation purposes for – the Executive Office for the U.S. Attorneys ("EOUSA") and the DOJ's Criminal Division ("DOJ Crim").

6.   Defendant Central Intelligence Agency ("CIA") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by the plaintiffs which are the subject of this action.

2

## FACTUAL BACKROUND

7.   Mr. Kiriakou worked for the CIA from 1990 until 2004 as an Intelligence Officer. *https://www.lawfareblog.com/indictment-john-kiriakou* (last accessed December 15, 2015). On December 10, 2007, Mr. Kiriakou became the first CIA officer to publicly comment on the agency's use of waterboarding. *http://abcnews.go.com/Blotter/ story?id=3978231& page=1* (last accessed December 15, 2015). On April 5, 2012, Mr. Kiriakou was indicted for, among other things, allegedly revealing the identity of a covert CIA officer to unauthorized third parties and scheming to conceal a material fact regarding the classified nature of information at issue in the pre-publication review process for a book he was writing. *https://www.lawfareblog.com/indictment-john-kiriakou* (last accessed December 15, 2015). On October 23, 2012, as part of a plea deal, Mr. Kiriakou plead guilty to violating the Intelligence Identities Protection Act by way of disclosing without authorization the identity of the covert CIA officer. *http://www. nydailynews.com/news/national/ex-cia-man-pleads-leaking-operative-identity-article-1.1190343* (last accessed December 15, 2015).

8.   Since pleading guilty, and particularly since being released from prison, Mr. Kirikaou has publicly stated on numerous occasions that he was targeted for prosecution due to his disclosures regarding the CIA's past use of waterboarding. *http://abcnews.go. com/International/cia-operative-prison-punishment-whistleblowing-torture/story?id= 27474359* (last accessed December 15, 2015). His public comments in 2007 regarding the practice were not referenced in his indictment, although the issue of waterboarding and torture was implicated with respect to the identity of the covert CIA officer regarding whose identity Mr. Kiriakou pled guilty to revealing. *https://www.lawfareblog.com/*

*indictment-john-kiriakou* (last accessed December 15, 2015).

9.   This lawsuit seeks records that might reveal, among other things: (a) the extent to which, if at all, the U.S. Government targeted Mr. Kiriakou for his 2007 remarks concerning the CIA's past use of waterboarding versus other perceived illegal conduct; (b) the extent to which Mr. Kirakou, if at all, lied to the U.S. Government, and about what; (c) what prompted the U.S. Government to pursue prosecution against Mr. Kirakou; (d) what harm was caused to the U.S. Government as a result of Mr. Kiriakou's actions; and (e) what led the U.S. Government to plea bargain.

## COUNT ONE - EOUSA

10. By letter dated December 31, 2015, JMP submitted to the EOUSA a FOIA request. The FOIA request specifically sought copies of records, including cross-references, pertaining to Mr. Kiriakou.

11. JMP indicated that the EOUSA could limit the scope of its search to the following categories of information:

1)   Records memorializing the entirety of the EOUSA's investigation into Mr. Kiriakou's actions, including but not limited to his disclosures of information during his December 10, 2007, interview, as well as his later alleged disclosures of classified information to unauthorized third parties regarding the identities of certain CIA officers and alleged false statements during the pre-publication review process;

2)   Any "damage" or "harm" assessments made regarding the impact that Mr. Kiriakou's allegedly unauthorized disclosures of allegedly classified information has had upon the national security of the United States;

4

3) Any records memorializing the extent to which, if at all, Mr. Kiriakou lawfully
raised concerns within the CIA and/or to Congress prior to
December 10, 2007, regarding the CIA's past use of waterboarding;

4) Any documentation memorializing the extent to which Mr. Kiriakou was
deemed by EOUSA to qualify as a "whistleblower" under then-existing laws,
rules and regulations with respect to any lawful disclosures of classified
information encompassed by line item (3);

5) Any documentation memorializing legal analyses of the viability of taking
legal action against Mr. Kiriakou as a result of his allegedly unauthorized
disclosures of allegedly classified information and alleged false statements,
including civil and/or criminal litigation; and

6) Any documentation memorializing legal analyses of the viability of taking
legal action against Mr. Kiriakou for any lawful disclosures of classified
information encompassed within line item (3).

JMP clarified that the EOUSA could limit the timeframe of its search from
January 1, 2006 up until December 31, 2012. JMP further clarified that the scope of the
EOUSA's search should not be limited to EOUSA-originated records. JMP also
requested that responsive records be produced in electronic form.

20.

12. In the FOIA request, JMP pre-emptively waived any objection to the redaction of
the names of any U.S. Government officials below a GS-14 position or whom otherwise
were not acting in a supervisory position. JMP similarly waived any objection to
redactions of the names of any U.S. Government contractors in a position of authority

5

similar to that of a GS-13 series civilian employee or below.

13. In terms of all other third parties (aside from Mr. Kiriakou) who work for the U.S. Government and whose names appear in records responsive to this request, JMP explained in detail that the privacy interests of those individuals have been diminished by virtue of their involvement in one or more of the U.S. Government functions described above as falling within the scope of the FOIA request. In terms of Mr. Kiriakou himself, JMP similarly described in detail the basis for its conclusion that the public interest in records responsive to the FOIA request outweighed Mr. Kiriakou's categorical privacy interests. Relying upon the public interest aspect outlined regarding third party privacy interests, JMP stated that it was also seeking a waiver of fees or, at a minimum, a reduction in fees.

14. By letter dated January 20, 2016, EOUSA acknowledged receipt of the request and assigned it Request No. FOIA-2016-00964.

15. To date, no substantive response has been received by JMP from the EOUSA. JMP has constructively exhausted all required administrative remedies.

16. JMP has a legal right under the FOIA to obtain the information it seeks, and there is no legal basis for the denial by the EOUSA of said right.

## COUNT TWO - EOUSA

17. By letter dated December 31, 2015, JMP submitted to the EOUSA a FOIA request. The FOIA request sought copies of record, including cross-references, memorializing "crime reports" received from other Federal agencies seeking potential criminal prosecution of Mr. Kiriakou.

18. JMP clarified that the EOUSA could limit the timeframe of its search from January 1, 2006 up until December 31, 2012. JMP further clarified that the scope of the EOUSA's search should not be limited to EOUSA-originated records. JMP also requested that responsive records be produced in electronic form.

19. In terms of Mr. Kiriakou, JMP described in detail the basis for its conclusion that the public interest in records responsive to the FOIA request outweighed Mr. Kiriakou's categorical privacy interests. Relying upon the public interest aspect outlined regarding third party privacy interests, JMP stated that it was also seeking a waiver of fees or, at a minimum, a reduction in fees.

20. To date, no substantive response has been received by JMP from the EOUSA. JMP has constructively exhausted all required administrative remedies.

21. JMP has a legal right under the FOIA to obtain the information it seeks, and there is no legal basis for the denial by the EOUSA of said right.

## COUNT THREE – DOJ CRIM

22. By letter dated December 31, 2015, JMP submitted to DOJ Crim a FOIA request. The FOIA request specifically sought copies of records, including cross-references, pertaining to Mr. Kiriakou.

23. JMP indicated that DOJ Crim could limit the scope of its search to the following categories of information:

1) Records memorializing the entirety of DOJ Crim's investigation into Mr. Kiriakou's actions, including but not limited to his disclosures of information during his December 10, 2007, interview, as well as his later alleged

disclosures of classified information to unauthorized third parties regarding

the identities of certain CIA officers and alleged false statements during the

pre-publication review process;

2)  Any "damage" or "harm" assessments made regarding the impact that Mr.

Kiriakou's allegedly unauthorized disclosures of allegedly classified

information has had upon the national security of the United States;

3)  Any records memorializing the extent to which, if at all, Mr. Kiriakou lawfully

raised concerns within the CIA and/or to Congress prior to

December 10, 2007, regarding the CIA's past use of waterboarding;

4)  Any documentation memorializing the extent to which Mr. Kiriakou was

deemed by DOJ Crim to qualify as a "whistleblower" under then-existing

laws, rules and regulations with respect to any lawful disclosures of classified

information encompassed by line item (3);

5)  Any documentation memorializing legal analyses of the viability of taking

legal action against Mr. Kiriakou as a result of his allegedly unauthorized

disclosures of allegedly classified information and alleged false statements,

including civil and/or criminal litigation; and

6)  Any documentation memorializing legal analyses of the viability of taking

legal action against Mr. Kiriakou for any lawful disclosures of classified

information encompassed within line item (3).

JMP clarified that DOJ Crim could limit the timeframe of its search from

January 1, 2006 up until December 31, 2012. JMP further clarified that the scope of DOJ

Crim's search should not be limited to DOJ Crim-originated records. JMP also requested

that responsive records be produced in electronic form.

24. JMP realleges paragraphs 12-13, as JMP's request to DOJ Crim contained similar language to that contained in the EOUSA request addressing privacy concerns and JMP's request for a fee waiver.

25. By letter dated January 11, 2016, DOJ Crim notified JMP that it was administratively closing the request, which had been assigned file number CRM-300506997. DOJ Crim stated that it had determined that JMP's request should be referred to EOUSA and the DOJ National Security Division for direct response. DOJ Crim, however, noted that JMP could administratively appeal the decision.

26. On January 12, 2016, JMP administratively appealed DOJ Crim's decision by way of a submission through the DOJ eFOIA portal.

27. By letter dated January 21, 2016, the DOJ Office of Information Policy informed JMP that it had received the appeal and assigned it number AP-2016-01320.

28. To date, no substantive response has been received regarding JMP's appeal. JMP has constructively exhausted all required administrative remedies.

29. JMP has a legal right under the FOIA to obtain the information it seeks, and there is no legal basis for the denial by DOJ Crim of said right.

## **COUNT FOUR – DOJ CRIM**

30. By letter dated December 31, 2015, JMP submitted to DOJ Crim a FOIA request. The FOIA request specifically sought copies of records, including cross-references, memorializing "crime reports" received from other Federal agencies seeking potential criminal prosecution of Mr. Kiriakou.

31. JMP clarified that DOJ Crim could limit the timeframe of its search from January 1, 2006 up until December 31, 2012. JMP further clarified that the scope of DOJ Crim's search should not be limited to DOJ Crim-originated records. JMP also requested that responsive records be produced in electronic form.

32. JMP realleges paragraph 19, as JMP's request to DOJ Crim contained similar language to that contained in the EOUSA request addressing privacy concerns and JMP's request for a fee waiver.

33. To date, no substantive response has been received by JMP from DOJ Crim. JMP has constructively exhausted all required administrative remedies.

34. JMP has a legal right under the FOIA to obtain the information it seeks, and there is no legal basis for the denial by DOJ Crim of said right.

## **COUNT FIVE - CIA**

35. By letter dated December 31, 2015, JMP submitted to the CIA a FOIA request. The FOIA request specifically sought copies of records, including cross-references, pertaining to Mr. Kiriakou.

36. JMP indicated that the CIA could limit the scope of its search to the following categories of information:

1) Records memorializing the entirety of the CIA's investigation into Mr. Kiriakou's actions, including but not limited to his disclosures of information during his December 10, 2007, interview, as well as his later alleged disclosures of classified information to unauthorized third parties regarding

10

the identities of certain CIA officers and alleged false statements during the
pre-publication review process;

2)  Any "damage" or "harm" assessments made regarding the impact that Mr.
Kiriakou's allegedly unauthorized disclosures of allegedly classified
information has had upon the national security of the United States;

3)  Any records memorializing the extent to which, if at all, Mr. Kiriakou lawfully
raised concerns within the CIA and/or to Congress prior to
December 10, 2007, regarding the CIA's past use of waterboarding;

4)  Any documentation memorializing the extent to which Mr. Kiriakou was
deemed by CIA to qualify as a "whistleblower" under then-existing laws, rules
and regulations with respect to any lawful disclosures of classified information
encompassed by line item (3);

5)  Any documentation memorializing legal analyses of the viability of
recommending that DOJ take legal action against Mr. Kiriakou as a result of
his allegedly unauthorized disclosures of allegedly classified information,
including civil and/or criminal litigation;

6)  Any documentation memorializing analyses of administrative measures that
could be taken against Mr. Kiriakou as a result of his allegedly unauthorized
disclosures of allegedly classified information, including with respect to his
continued eligibility for access to classified information;

7)  Any documentation memorializing legal analyses of the viability of
recommending DOJ bring criminal charges against Mr. Kiriakou for any

lawful disclosures of classified information encompassed within line item (3);
and

8) Any documentation memorializing analyses of administrative measures that
could be taken against Mr. Kiriakou for any lawful disclosures of classified
information encompassed within line item (3), including with respect to his
continued eligibility for access to classified information.

JMP clarified that the CIA could limit the timeframe of its search from
January 1, 2006 up until December 31, 2012. JMP further clarified that the scope of the
CIA's search should not be limited to CIA-originated records. JMP also requested that
responsive records be produced in electronic form.

37. JMP realleges paragraphs 12-13, as JMP's request to the CIA contained similar
language to that contained in the EOUSA request addressing privacy concerns and JMP's
request for a fee waiver.

38. By letter dated January 20, 2016, CIA acknowledged receipt of the request and
assigned it Request No. F-2016-00787.

39. To date, no substantive response has been received by JMP from the CIA. JMP
has constructively exhausted all required administrative remedies.

40. JMP has a legal right under the FOIA to obtain the information it seeks, and there
is no legal basis for the denial by the CIA of said right.

**COUNT SIX – CIA**

41. By letter dated December 31, 2015, JMP submitted to the CIA a FOIA request.
The FOIA request specifically sought copies of records, including cross-references,

memorializing "crime reports" filed by CIA with the DOJ for potential criminal prosecution of Mr. Kiriakou.

42. JMP clarified that the CIA could limit the timeframe of its search from January 1, 2006 up until December 31, 2012. JMP further clarified that the scope of the CIA's search should not be limited to CIA-originated records. JMP also requested that responsive records be produced in electronic form.

43. JMP realleges paragraph 19, as JMP's request to the CIA contained similar language to that contained in the EOUSA request addressing privacy concerns and JMP's request for a fee waiver.

44. To date, no substantive response has been received by JMP from the CIA. JMP has constructively exhausted all required administrative remedies.

45. JMP has a legal right under the FOIA to obtain the information it seeks, and there is no legal basis for the denial by the CIA of said right.

WHEREFORE, plaintiffs The James Madison Project and Ken Dilanian pray that this Court:

(1) Orders the defendant federal agencies to disclose the requested records in their entirety and make copies promptly available to the plaintiffs;

(2) Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552 (a)(4)(E) and/or 28 U.S.C. § 2412 (d);

(3) expedite this action in every way pursuant to 28 U.S.C. § 1657 (a); and

(4) grant such other relief as the Court may deem just and proper.

Date:   February 11, 2016

Respectfully submitted,

/s/

_____
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W., Ste. 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for Plaintiffs